(No. 5494-

GERALD T. KOEHLER, Claimant, *vs*. STATE OF ILLINOIS, Respondent.

*Opinion filed April 18, 1972.*

RAY H. FREEARK, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

PERLIN, C.J.

Claimant seeks recovery of $25,000 for injuries suffered on December 22, 1967, as a result of a motor vehicle accident.

Claimant contends that the accident was the result of respondent's negligence in permitting flood water to cover U.S. Route 50 at a point where it crosses Silver Creek; negligently failing to apply salt to prevent the flood water from freezing; failing to prevent the water escaping from Silver Creek onto the highway; failing to make inspections; failing to warn the plaintiff of the icy condition on the highway; failing to detour traffic around the alleged dangerous condition; and failing to close the highway.

Claimant testified that he was a teacher and basketball

coach at Althoff High School in Belleville on the date of the accident and at the time of the hearing; that he drove from Belleville to a school game at Breese by way of Route 50, having left Belleville about 6:00 p.m. The eastbound lane of the road was dry and in good condition. Claimant followed the same route back to Belleville about 9:30 p.m. The weather was clear, and he was going fifty to fifty-five miles per hour (the speed limit was 65 miles per hour) when the car started to spin. He then blacked out and woke up in the car. He had no previous warning of slickness or icy conditions prior to spinning and sliding and the accident occurred at a level stretch of road. Prior to the accident, he enjoyed good health. Injuries included having his spleen removed, a damaged liver and heart, an injured kidney, a hole knocked in the orbit of the eye and a broken bone below the left eye.

Claimant further testified that he was confined in the hospital from the date of the accident until January 29, 1968, with a second confinement for an operation to the orbit of his left eye. He lost weight and at the time of the hearing in 1968, was still unable to work a full day or play tennis or basketball, activities he had previously enjoyed.

State Trooper John R. Mayer, who investigated the accident, testified that he arrived at the scene about 10:25 p.m. He observed that there was rain or water that had come up on the highway in the eastbound lane and that it was freezing, causing slick conditions. He further testified that there were both water and ice on the westbound lane and that after he arrived on the scene, another car swerved off the road at that point. His investigation showed that the Mustang car driven by claimant apparently lost control and came across into the eastbound lane where it was struck in the side by a 1966 Chevrolet pickup truck. There was a low spot on the road where the water came up. There

was no rain at the time of the occurrence. After the witness completed his investigation, he called the highway department to cinder and salt the highway and put a low spot warning that there was ice on the road. The following day, the road was closed for high water and traffic was rerouted. At the time of the accident, there were no barricades, signs, cinders, or salt on the road.

Leon Streif, who operated a garage and wrecking service, was called to the scene of the accident. Road conditions were "a sheet of ice," but it was not raining at the time of the accident. He had seen water over the road on other occasions, but he had not seen icy conditions. He testified that during the five previous years, water had been on the road after a heavy rain because of Silver Creek "obstruction or congestion." He remembered floods closing the road at the point in question in 1951 and 1954, and that within five years there had been water on the road on several occasions.

Michael Pier, a student, testified that on the date of the accident, he was driving along Route 50 at the point in question between 8:00 and 8:30 p.m. and noticed the water was high and almost on the road and was up to the side of the pavement. He came home on the highway about 9:00 and slowed down because the road was becoming slick. He had seen water on the road before. He had also, on occasion, seen the highway barricaded when water was on the road.

Charles Gray testified that he was a member of the volunteer fire department for Lebanon and was called to the accident between 10 and 11 p.m. The creek was on the verge of going over the road. He remembered that 1958 was a time of a big flood. He stated that there is usually a small amount of water which collects after a rain at several

spots. He did not remember if the creek had gone over the road in the last five years.

William Pfeffer, a farmer, testified that part of his farm is between Silver Creek and the channel. He has seen water from Silver Creek overflow at the banks at Highway 50 many times, although he could not give the dates. Water would come up to the edge of the concrete and the wind would cause it to splash over the road.

Another farmer in the area, Terry Plab, testified that Silver Creek has overflown its bank and gone up on the pavement at Route 50 about 3 or 4 times during the past five years.

Witnesses for respondent included the following: Edward Jankowski, Assistance District Maintenance Engineer of the area in question, a job which he had held since April, 1967, who testified that between December 20-21, 1967, there were 3.35 inches of rain and a trace of rain on December 22, 1967. He did not know of Silver Creek overflowing its banks between 1961 and the date of the accident.

George Huhman, civil engineer with the Division of Highways testified that he inspects highways and oversees twenty-three maintenance sections. On the day of the accident, he encountered flooding at another point and spent most of the day there. He had passed through Silver Creek at 7:00 a.m. and 4:30 p.m. that day, but could not see too much because of darkness. He had come into the maintenance section in October and was not familiar with the Silver Creek bottom area. He was called to the scene of the accident where he observed ice and water completely across the road. On the day in question, there were floods throughout the area and the maintenance personnel were so

concerned about other areas that they "weren't hardly paying any attention to Silver Creek." Mr. Huhman explained that the Silver Creek bottom area is a large, flat, marshy area and that whenever Silver Creek is high, it overflows into the area and causes a backup area in the bottom. Mr. Huhman further testified that there is a low place along Silver Creek "where the road has a tendency to collect water after a heavy rain."

Walter Dawson, a section man for the State Highway Department, testified that he was familiar with the water in the Silver Creek area, and that he has known water to come over Silver Creek in 1961 or 1962. He was called to the scene of the accident where he put salt on the pavement and noticed about six inches of water on a small strip of pavement. On the afternoon of the accident, he had looked at a red flag he had placed along the water edge to see what the water level was and he had "Water on Pavement" signs with him, but did not put any at that place.

Another section helper, Ralph George Herman, testified that he passed through the Silver Creek area about 8:45 p.m. the evening of the accident and the highway condition looked normal, but noticed water on the highway upon his return at the scene of the accident. He stated that he had worked for the Highway Department since 1963, and that this was the first time he had seen water on the highway.

Joe Madura, also a Highway Department worker testified that he noticed that the water level had risen during the day of the accident, but the workers did not put up any signs, although they did put up a stake.

Respondent contends that there was no verified flooding since 1961 and that not one witness testified that he had ever seen ice on the pavement due to flooding, therefore the State had no reason to believe that water would encroach upon the highway or if it did, that it would

constitute any more than a nuisance. "Reasonable care," according to respondent would not appear to include having to anticipate simultaneous circumstances of encroachment and freezing, when encroachment was very rare and encroachment and freezing combined was never known to have occurred before. Respondent also suggests that claimant did not use due care, although no evidence was introduced to support that allegation. The Court fails to understand why no apparent effort was made toward this end to obtain the testimony of Vernon Coleman, the driver of the pickup truck which collided with claimant's automobile.

No one disputed that there were no barricades or warning signs advising the public of the condition of Silver Creek, nor that there was a history of water upon the road at the spot in question, due to the overflow conditions of Silver Creek.

The instant case is similar to the following Court of Claims cases: in *Carr* vs. *State*, No. 4901, the respondent was held negligent for failing to take precautions where an unusual accumulation of ice existed on the highway and the surrounding area was dry. In *Bovey* vs. *State*, 22 C.C.R. 95, the respondent was held liable for an accident which occurred on an icy bridge, although it had taken precautions to help alleviate conditions and posted a "Bridge Slippery When Wet—Frosty" sign, because its precautions were inadequate to remedy the situation. The bridge was subject to freezing when there was no evidence of ice, snow, or extremely cold weather in the surrounding area . . . "thus creating a trap for the unwary traveler." (p. 111) The court cited other cases which involved traps created by unexpected icy areas.

Although the area in question may never have become icy in the past when there was water on it, it was reasonably

foreseeable that it would become icy and hazardous when the temperature dropped below freezing after the amount of rainfall it sustained. The failure of respondent to erect signs, barricades, or other warnings of the "trap" was negligent and was the proximate cause of claimant's accident.

Claimant's physician, John S. Hipskind, testified that claimant suffered interabdominal hemorrhage, a lacerated spleen, which was removed, and a lacerated liver, as well as pneumothorax of the left lung. He testified that there would be residual effects because of loss of the spleen and that there could be a problem with regard to the lung, which would take surgical procedure to correct.

Dr. Lorenzo P. Maun testified that he performed plastic surgery on claimant to correct the eye receding into the skull. The doctor stated that claimant would need additional surgery to correct the condition if it recurred and that he has a residual disability causing a sinus problem and numbness on one side of the face. That surgery was performed on April 10, 1968.

Claimant has incurred substantial damages and medical fees, and is entitled to recover therefor. A total award in the amount of $20,000.00 is hereby made in this case, payable as follows:

Gerald T. Koehler ........................................ $ 8,229.03
Althoff Catholic High School and the
 Maryland Casualty Company, as subrogees ............... 11,770.97